Our first case up this morning is 4-12-09-85, Rettig v. Moore and Heisser. For the appellant is Daniel P. Koussak, I'm sorry, Thomas Watson. Thomas Watson, you are he, sir? And James Long? Yes, sir. Okay, Mr. Watson, you may proceed, sir. Good morning, Your Honors. Good morning, please report with counsel. We're here today on a de novo review of the lower court, granting summary judgment to the defense in a rear-end car accident. I know the court's up to speed on the facts, so I won't really spend any time on those. I think the most important fact is that this was a rear-end car accident. The law in this state has been established for, I think, over 40 years. And this comes from the Bergdorf case, it's our lead case in our brief, that stands for the proposition that it's the responsibility of the trier of fact to determine whether the rear driver in such accidents was acting responsibly under the circumstances or that the accident was unavoidable. Here, that's all that we're asking for is the court to allow a trier of fact to determine whether the rear driver in such an accident was at fault. That rule of law has been adopted in every district in the state, including this district, and that was in the Abrams v. City of Mattoon case that we cited. Well, other than the proposition of law, what is it in the record that tells us that there's a disputed issue of material fact and that it is simply what really is an accident? Sure. Well, I think there are many questions of fact. One, you have to start with the proposition that he did rear-end the plaintiff, and that's an understatement. You said we were familiar with the facts. We know that. We'll start with that. Then, next, you go, well, was he following too closely? That's a question of fact. Was he driving too fast for the conditions? It was raining out. There was heavy traffic. Did he place himself in a position that limited his options? You said the defendant said that he was halfway on the side of a semi at the point where there's an on-ramp coming in. He's really limited his options by staying next to a semi in heavy traffic. Well, let me ask you this way, following up on Justice Connick's question. As a good rule of thumb in tort cases, when we want to hold somebody liable, you ought to be able to say what he did wrong. What did Mr., what was his name? Mr. Heiser. Mr. Heiser. What did Mr. Heiser do wrong driving this case? Well, I think, obviously, he was following too closely. He failed to avoid an accident. He was going too fast for the conditions. He put himself in a position where he's limited his options. In case of an emergency, I think the same, actually the same situation was in the David v. Black case that we cited to the court. The same situation where there's a car in front, the defendant is behind him, there's a car to his side on the right-hand side, the car in front of the defendant swerves out of the way, the defendant couldn't swerve to his right, and he ended up rear-ending the plaintiff. The court said there that that was an issue for a trier of fact. I'm not necessarily saying that he's... Well, counsel, it seems to me that your analysis, your entire analysis is, this bad accident occurred, it was a rear-end accident, he's responsible, next case. Other than saying, think of all the bad things that could have caused it. He could have been speeding, could have been driving too fast for the conditions. None of that leaps out at me as being evident or clear. Indeed, another way to look at this is, your motion for summary judgment should be granted if the case had gone to trial. As everyone addressed it, a directed verdict would have been issued because, at this point, you didn't prove your case, and there's not a basis upon which, as the trial judge, I can let the jury consider this. If I'm the trial judge in this case, and this trial judge is a long time, why should I grant a directed verdict? Well, I think, and that may be, but at this stage, at the summary judgment stage, we don't have to prove our case, we just have to prove that there's an issue of fact. Well, at the end, if no jury could look at this evidence and conclude that you had proven the case, that's the same standard as granting a motion for directed verdict, isn't it? No contrary verdict could be permitted to stand? I would agree with that, yes. Well, what evidence is there that he did something bad here? What evidence is there that Mr. Iser didn't do what he should have done? So, ladies and gentlemen, look at this evidence. He should have done X and he didn't. Well, I think right now, at this stage, I think I've gone over this a few times, so I don't want to keep on saying the same thing, but I would say when you're following too closely to somebody, there's a chance that you can rear end them. You have to stay a distance far enough away from the cars in front of you to avoid an accident, to avoid an emergency. That's your duty as a driver. No matter what, that's it. So, essentially, then you're saying if there's a rear end accident, you're responsible. No, I'm saying that's up to the jury to decide. Well, the jury's, no, no. There's got to be a basis upon which the jury can conclude he was negligent. He was doing something wrong. I'm sorry, Justice Steigman. I was just going to echo what Justice Kinnick and Justice Steigman have said here already and just suggest to you that this isn't a case of res ipsa loquitur. When you're driving behind someone and there's a rear end collision, it doesn't automatically mean there's negligence. We can all envision various scenarios where there can be a non-negligent cause for a rear end accident. So if you just put that then off to the side, that this was a rear end accident, and then pay particular attention to the specific facts of the case, you need to establish and present here to us what it was that was the negligent act on the part of Mr. Heiser, or act. And if you just focus on that, there may well be something here, and I'm going to ask some questions of Mr. Long here in that regard, but perhaps you can itemize what those specific acts of negligence were. Because I think that is, we probably would prefer not to hear more about this being a rear end accident and hear more about the specific acts of negligence. Well, Your Honor, I guess I'm a little confused because I'm bringing the Court's attention again. The case law has been settled, and this Court has even said that a rear end accident is a trier fact. The trier fact is the one who decides whether it's negligent. I think if you took any rear end car accident... Now, let me interrupt you there just for a moment. Do you have a single case that simply indicates that you get beyond summary judgment or directed verdict just based on the fact that it was a rear end collision? Yes, Your Honor. In our brief, we cited a case from every district that stands for the proposition that this is an issue for the trier fact to decide. I think if you take any rear end car accident, there's going to be negligence of following too closely, failing to reduce speed to avoid an accident. There's going to be something that at least there's an issue of fact that a jury could decide. They could very well decide that this was unavoidable, and I'm not arguing that today. Did you have the opportunity at deposition to ask questions about speed, location, driving conditions? Yes, Your Honor. Point to me in the depositions, because those are all... That's what's before the court, summary judgment. What does the evidence now show that the defendant did that was negligent? Other than the assumption that if there's a rear end, he must have done something. Well, I would say he obviously was negligent in some respect. Why? Because of the fact that we have three cars all faced with the same emergency that the defense claims. We have a semi that is able to avoid the accident and not hit any other cars. The plaintiff is able to avoid the accident with the car in front of her and not hit any other cars. The defendant, he said that he never even saw the plaintiff swerve out of the way. Where was he looking? We don't know. That's a question of fact right there. Was he paying attention to the cars in front of him? It appears not. He never even saw the plaintiff avoid the accident. I would say there's a negligent act right there, at least enough to get by a summary judgment motion at this point. I think the other part, too, is limiting his options when he's essentially blocking the on-ramp from any cars to come onto the interstate. He's put himself on the position immediately next to the semi. The semi blocks the on-ramp to get on. Well, you'd seem to be arguing as if this was negligent driving in some fashion. What do you mean by that? If I'm familiar with this intersection, he is in the left-hand lane and there's a semi truck in the right-hand lane, an I-74 going west. As you pass the I-57 on-ramp from the northbound lanes. What did he do wrong there? Is he wrong to be in the left lane? What do you mean by that? Well, not necessarily wrong, but I think under the situation of the facts, when you have rainy conditions, that can affect your stopping ability. Well, just focusing on the left-hand lane, you just argued again, as you did in your brief, he was blocking somebody from something. I'm not sure I understand what the problem is. What was he doing that was bad by being in the left-hand lane? Well, I think under these circumstances in heavy traffic, when you're in that left-hand lane and you're passing a semi, that's also blocking the on-ramp. I would say that's at least a question of fact, whether you're negligent there. I don't understand what you mean. The semi is blocking the on-ramp. Oh, sure. Well, you have the left-hand lane that the defendant's in, the right-hand lane that the semi's in, and then the on-ramp to come in. That would be, you'd have to get... That's coming in from the right. Yeah. How does his being in the left-hand lane affect any of that? It prevents the semi from merging to the left lane to allow the oncoming traffic to come off. And that's what we have here. The semi is unable to merge to the left because the defendant has placed himself next to the semi. And that's what ends up happening with the third vehicle involved. They have to speed up to avoid the semi. They speed up, they spin out in front of the semi. I would say that's... What about if they slow down? Whose has the right-of-way? The right-hand lane or the merge lane? Well, that's a good question, I think. They're also a co-defendant in this case. I think that's an issue as well. Who's the co-defendant? The car that was trying to merge onto the traffic that spun out in front. That was the one that he lost control? Correct. Is the semi a... The semi drove off. We don't know who the semi is. If he knew who it was, would he be a defendant too? Potentially, I'd have to find out what he said. You know, if there was something in the police report. I don't know. That would be speculation at this point. So with Mr. Heiser, if I understood the facts correctly from the depositions, his deposition, so Moore is on the on-ramp. The semi is in the right-hand lane. Your client and Mr. Heiser are in the passing lane with your client ahead and Mr. Heiser behind in the passing lane. Correct so far? Yes, Your Honor. And with Moore entering on the on-ramp, according to Mr. Heiser, it was 10 to 15 seconds that passed between the time that he saw Moore's vehicle, which had been blocked from view by the semi. It was 10 to 15 seconds that passed from the time he saw Moore, and so now Moore is in front, correct? Moore's vehicle would be in front of the semi? 10 to 15 seconds between the time he saw Moore's vehicle and the time of the collision. Is that accurate? According to Mr. Heiser, I think that is fairly accurate. Okay, so maybe that's an area of fertile ground for you because now that estimate may be off, but now we're at a summary judgment stage. So those are the facts, and we have to view the facts in the light most favorable to your client. So why didn't Mr. Heiser do something in that 10 to 15-second period when he sees Moore's vehicle in front of the semi? Presumably at this point she's spinning because it's my understanding that when she entered the right-hand lane, she had already lost control of her vehicle. Am I right so far in understanding the facts? Yes, Your Honor. I think that raises a very good point. There is 10 to 15 seconds of time where the defendant could do something. Could he have applied his brakes harder? Could he have avoided the accident to the right? I don't know. These are things that I think would be further explored at trial, let the evidence come out, and the jury very may well believe that there was no other option. But I think the plaintiff has to have an opportunity to present her case and let the jury decide if that answers Your Honor's question. Yes, I wanted to make sure I understood the facts correctly there. In that 10 to 15-second estimate, that was an estimate volunteered by Mr. Heiser during deposition. Is that right? Correct. And also during that 10 to 15 seconds, Mr. Heiser, he said that he never even saw the plaintiff swerve to avoid the car in front of him or in front of her. I think there would be another issue for the jury to decide where was he looking? Was he paying attention to the cars in front of him? It appears not. And then I guess the next part of the case would be, I think we've been hitting on it, the emergency doctor. It wasn't even really raised until the reply brief at summary judgment. What does that mean? What is your position about that? Assuming that's the case, what are you arguing to us? Well, typically I think the rule of law is that you have to raise these issues in your actual motion and not raise new arguments in the reply brief. But by the time it came to there, I realized that the court was going to rule on this one way or another. Did you ask the court not to consider it? I believe so. I believe in the oral arguments I would have to double check. But in any event, I think it's still before the court and I have no problem addressing that. Well, as a matter of procedure, I'm not sure what we're supposed to do. Let's assume for the moment that there is merit to the theory. What would we do? Be reversing the motion for summary judgment now and let it go back and then consider the emergency doctrine and now it would be granted because it was presented up front? Exactly. That's why I think the practical aspect of it would be to just let it go and let the court decide it. But even there, in the emergency doctrine, the cases are, I think, very clear. These are issues for a trier of fact to decide whether the emergency was avoidable or not. I wasn't able to find a single case that granted summary judgment in a rear-end car accident with the emergency doctrine or in any rear-end car accident. Let me just give you another hypothetical. One that I'm regrettably very familiar with. I wasn't involved, but I know people were. Three car accidents occurred. Busy shopping area in Champaign and car one driving this busy street, apparently for whatever reason lost control and didn't pay any attention and was driving probably even in excess of the 30 mile an hour speed limit, ran into car two, which was moving relatively slowly because of traffic in a busy area, which in turn ran into car three with enough force that car three was totaled because of the damage to the rear end of the vehicle. Car two was a rear-end accident as well. It was struck by car one. Would summary judgment be inappropriate had the third driver sued car two for the rear-end accident? I think according to the case law, I think it would be inappropriate. Does that make any sense? Well, I think that hypothetical is a little different here. Well, obviously the hypothetical is a little different, but the reason it comes to mind is because your primary thrust seems to be if there's a rear-end accident, it's a jury question period, and neither a motion for summary judgment nor a motion for a directed verdict of summary judgment denied would be appropriate because who knows under these myriad of circumstances what a jury might conclude with regard to the car who rear-ended, the rear-ended, the torque-feeser allegedly. Who knows? He could have been doing something else or could have aborted it. And, Your Honor, if I may go back to the hypothetical, I think the big difference there would be car two was struck by car one, so he was out of control at that point. That's out of his control. In this instance, in the case before the court, there's an emergency in front of the defendant. He's in complete control over his car. Whether he could stop and slow down in time or avoid the accident, those are, I think, questions for a jury. That's where I would say the hypothetical is a little different. Well, so he should be able to avoid his accident when he's confronted with a car at interstate who's spun out and out facing him? Exactly. Two other cars also avoided the same emergency, so I don't think it's a stretch. Well, it seems to me to be a very high and harsh standard. But, you know, you say, well, Jerry could have found, he could have done more, but, you know, I go back to my fundamental point that we ought to be able, at this point, we ought to be able to say he did something wrong before he could be found liable. Well, your time is up, and you'll be given an opportunity to address this again in rebuttal. Okay, thank you, Your Honor. Mr. Long? Please support counsel. Counsel. Your Honors, in this case, we filed a motion for summary judgment based on the idea that plaintiff could not show that my client was negligent. I think there are undisputed material facts here. There's the version from Ms. Redding, which states that she saw a car coming at her head on. She avoided it by moving to the shoulder. We have Ms. Moore, who is the car that was coming head on in the left-hand lane. Let me interrupt you here for a moment. Certainly, Your Honor. Because it's something that I just want to be clear about. In your brief, you say this, I think, maybe three times, that the Moore vehicle was coming head on. Moore, Heiser, Redding, they're all going in the same direction, right? Well, Moore. They're all going in the same direction. Technically speaking, I suppose that's right, Your Honor. Moore really wasn't going in the same direction because she was intending to go in the same direction, but she used the vehicle that came on 7420. Okay, the direction of travel for Redding and Heiser, which is north, south, east, west. They're both going west. They're going west, okay. The time of the collision was Moore's vehicle heading eastbound? Correct. She actually reversed travel and was going against, had reversed travel and was actually heading in the opposite direction as Redding and Heiser? Correct, Your Honor. She was the vehicle coming onto the 74 westbound from the on-ramp from 57 north, and she tried to avoid or get in front of this semi that was to the right of my client in the right-hand lane. And for whatever reason, and she's not even really sure, she lost control of her vehicle and spun around, and instead of heading westbound, she started heading eastbound towards both Ms. Redding and Mr. Heiser. And so all vehicles eventually became in the left-hand westbound lane, but Moore was going eastbound head-on towards Redding and Heiser. So it wasn't that she was spinning out of control but still moving in a westerly direction. She came to a stop and then actually started back up going easterly? I don't know if she came to a stop, Your Honor, and she was not very clear, which is understandable for the situation she was put in, but my understanding from the testimony of the parties is that for whatever reason, she spun around going whatever speed, and she sped up going onto, from the on-ramp. That caused her to lose control. Without stopping, her vehicle eventually started proceeding eastbound. Physics dictates that at some point there was a stoppage of her vehicle if she was heading westbound and then ultimately headed eastbound, because you can't have movement in one direction and then movement in the opposite direction without there having been a stoppage somewhere in between. I'm trying to get from you whether or not you're actually saying that she reversed direction. Your Honor, I'll say that I didn't do very well in physics, but my understanding of the testimony is that all we know is what Ms. Moore has had to say, and I don't think she was very clear and I don't think it was elicited. Well, at a minimum, she's facing eastbound at this point, whether she's moving or stopping. Yes, and both, I mean, again, Reddick and Heiser, whether it's the heat of the moment or what, said that her vehicle was coming towards them, and they're presented with the situation. That's what Reddick said too? Yes. Does the report show where Moore's vehicle ended? Oh, Moore was not... Because she's not in the accident in the sense of a collision. Correct. Where does her vehicle end up? I believe she comes to a stop on the shoulder facing eastbound on westbound 74. On the left shoulder, the shoulder off the passing lane? I believe so, Your Honor. I will say that that was probably not as explored, as in-depth as it could have been. From my perspective, I obtained the facts that I felt were necessary for my client from Ms. Moore when she said... Mr. Watson is correct when he argues that there's no case that stands for summary judgment being awarded to a defendant who was charged with being the cause of a rear-end accident, isn't it? Your Honor, I believe he is, but just because there's a lack of authority that says that doesn't mean that it's not a proper situation. In my experience, there are several situations where there's not appellate authority on something because no one will appeal a certain issue. What about this time factor that you heard discussed? Yes, Your Honor. I'm looking at that, and that is referenced on page A71 of the appellate record, page 22 of Mr. Heiser's deposition. The 10 to 15 seconds is the time frame in between when he first saw the Reddick vehicle and when he collided with it. And my client's testimony was that he first became aware of the Reddick vehicle in light of everything that was going on around him when he was off to the side on the shoulder. So he saw her... You said the Reddick vehicle. It's the Moore vehicle, isn't it, that he's referring to? Starting at page 21 of his deposition. No, Your Honor. On page 21 at the beginning, do you have an estimate as to how fast Colleen's car was going when you first saw it and you were two lengths away? His answer was, well, it wasn't hardly moving at all. My client did not know the specific names of the drivers of the vehicles. Well, hold on. At page 21, let's start with line 6. Okay. It says, question, okay, can you help me with almost stopped? Answer, okay, it would have been going a little fast. If it had... If it would have been going a little faster, she was past the car headed back the other way. I wouldn't have hit the question. The car headed the other way, would you say that? Oh, the Moore car. Answer, yes. Question, all right. What I'd like to get on the question is this. When you first saw her, you said she was almost stopped. So this is now talking about the Moore car. Is that right or no? I don't believe so, Your Honor. I think the Moore car was kind of a throw in there because the first question on that page is, do you have an estimate as to how fast Colleen's car, and the plaintiff is Colleen Reddick, Your Honor. The car headed the other way, would you say that? Oh, the Moore car, yes. I suppose, Your Honor... But the Reddick car was never headed the other way, was it? Correct. But the question is about five miles an hour. Again, it says you applied your brakes and then we go to the next car. And how long was it at first you saw her or noticed her when you're going, when you're two car lengths away? And when we're talking about two car lengths away, that's what my client is talking about when he first saw the plaintiff's Reddick vehicle. So I certainly understand your question, Your Honor, but I believe that my client is talking clearly about the plaintiff's vehicle because it talks about the 55-mile-an-hour collision on page 22, and that's how fast my client believed approximately he was going when he struck the Reddick vehicle on the shoulder. And it had stopped or been very slow at that point? He wasn't sure? Well, my client felt that she was moving about five miles an hour. Ms. Reddick said that she felt she was moving about 35 miles an hour, I think. But she had slowed down considerably? She had slowed down considerably from her highway speed, which in light of the circumstances of the accident, people misperceiving what other people are doing, I think is clearly appropriate. Even Ms. Reddick thinks she may have been moving. She's not sure, but again, as she said, this is a bang-bang situation where everybody is reacting to save their lives. So you get a bunch of attorneys together asking questions, and people are doing the best they can. What's your explanation as to why your client didn't notice the plaintiff's car until she was two car lengths away? Well, Your Honor, this is an overpass bridge. I think that's in the record. There's a semi that hit my client's right that starts swerving. I think it's reasonable for a person and for the judge in the situation to determine that what's going to take your eye on the situation is the big semi to your right. But I mean, your client's actually following the plaintiff in the left-hand lane, right? Certainly. But he doesn't notice her, even though he's the car directly behind the plaintiff's vehicle? Well, Your Honor, I think he was frankly very honest to say that prior to this accident, Ms. Reddick was not a key focus of what was going on, and then when he has diverted his attention away by a semi that is swerving on this overpass situation, he starts thinking of something else. What did he say about the semi, and what did it do? He said it swerved to the right, swerved because of a vehicle. And then the next thing he knows, after the semi is swerving on this overpass bridge, there's a car coming at him in his lane of traffic, and he felt that he could not move to the right-hand lane because the semi was still there. He felt that he could not go straight ahead because of more vehicle. He couldn't go very far to the left because we are on the overpass. It's, you know, see if the concrete holds the vehicle at the impact or go on the shoulder or go straight. Unfortunately, Ms. Reddick was there. Ms. Reddick avoided colliding with the more vehicle. Correct. Sees the more vehicle, sees whatever is happening to the more vehicle in front, avoids colliding with the more vehicle. Why isn't your client able to do the same thing? Well, if Ms. Reddick was not there, he wouldn't have had an impact either. This is, unfortunately, a three-vehicle accident. Well, what was his speed at the time of impact? Was there an estimate given? He estimated between about 55 to 60 miles an hour, which is under the speed limit. Well, Ms. Reddick was actually stopped or close to a stop at the time of the collision, right? Yes, Your Honor, and she had the first opportunity and a clear path ahead of her to avoid. So, yes. But if he's maintaining a distance, a safe driving distance behind the plaintiff's vehicle, she sees the more vehicle swerving in front, is able to pull under the left shoulder and slow down almost to a stop. And yet he strikes her from behind, still doing 55 miles per hour. To me, it makes me wonder why didn't he perceive this imminent danger and slow down at least below what he was driving at, which was 55 miles per hour. Well, Your Honor, I think you're focusing on what my client perceived versus what Ms. Reddick said. What would prevent him from perceiving the more vehicle? Nothing prevented him from perceiving the more vehicle once he was on the shoulder and it was in front of him. But, Your Honor, again, my client felt that she was barely moving. She testified she was going about 35 miles an hour, 30 to 35 miles an hour, which is only 20 miles an hour less than my client. So she had not had the opportunity to stop. This situation is very tenuous. There's no other way to describe it. You can't go to the right. You can't go forward. You can only go so far to the left. And then you have to go straight left. And unfortunately, Ms. Reddick was still there, still moving 20 miles an hour or less. But Ms. Reddick did not have the semi issue to deal with. All she had to deal with was Ms. Moore. Mr. Heiser had a semi to his right, a car coming at him straight ahead, and a bridge embankment wall to his left. Ms. Reddick had a car coming at her, to her, straight ahead, and a clear path on the left with no one on the shoulder. My client was left with the aftermath of the Reddick situation, which was a car on the shoulder. I believe that he did everything that he possibly could in that situation. As stated by the trial judge, he was trying to save his life. You go to the right, maybe you can avoid the semi, maybe not. Maybe you get under the semi. Who knows? You go straight ahead, you know what's going to happen. It's a car coming at you head on. You go to the left, which is a clear path. Now you can't, again, if this was an interstate and there was a ditch or whatever on the side, maybe you can go further there, but we're not in that situation. We're on a bridge that has a defined area to go. And Mr. Heiser said that once his vehicle came to a stop, he was still on the bridge because his truck door couldn't open on the driver's side because it was wedged against the bridge wall. So he did impact Ms. Reddick and propel her forward with the speed of his vehicle, which is certainly understandable, but my client came to a stop on that bridge. So Ms. Heiser, based upon the fact that his vehicle stopped on the bridge and he didn't move it from there after the accident, he had nowhere else to go. He could go to the left a little bit, but then there's something in his way on the shoulder, and unfortunately that was Ms. Reddick. I'm certainly not going to point the finger at Ms. Reddick and say that she did anything wrong, but my client had very little options. Yeah, and I understand what you're talking about in terms of positioning of the vehicles in the lanes of travel and what's possible in terms of movement. I'm more interested in wondering why the speed was what it was at the time of the collision. Well, I think under the circumstances, Your Honor, he applied his brakes and swerved. If he would have applied his brakes too much at a high rate of speed, I believe safe driving tips tell you that you should not automatically slam on your brakes. You should try to decelerate slowly if you can, and my client made an evasive maneuver to the left. If he's slamming on his brakes and making that evasive maneuver, that's putting even more people in danger, I believe, with what would have happened where it happened. The key thing here is where this all occurred, and we're in a very tight space. My client had limited options, and that's why, again, I don't think that there's any evidence that he did anything negligent, but as Mr. Watson said, this is a de novo review, and as we cited in our brief, the court can consider all authority in affirming the lower court, and this is where the emergency doctrine comes into play as well. Your Honor, my client did not create this situation. He was reacting, and I believe the undisputed facts show that he did what a reasonably prudent person would do in that situation, and unfortunately, Ms. Reddick had to be hit, but she has a viable cause of action against Ms. Moore because I think the evidence clearly shows that she is the sole proximate cause. Is Mr. Watson correct that the emergency doctrine, such as it is, wasn't raised until your reply brief at the trial level? I did reference it in my reply brief, Your Honor, but I don't believe the court necessarily affirmed summary judgment on that basis. But you're asking in your brief in this court to affirm on any basis, including the emergency doctrine, true? I believe that, yes, the court can affirm on any basis that appears from the record pursuant to the authority of Beecham, but I think clearly, even if we don't consider the emergency doctrine, Your Honors, there is no evidence of negligence on the part of my client, and that's where the plaintiff's case fails against Mr. Heiser. She must present something. The mere fact that an accident occurred is not evidence of negligence, and that's basically what the plaintiff is stating in the brief, and by saying that there is no authority that says just because you can get summary judgment on a rear-end accident. Well, it's a fact-specific situation. We've cited the specific facts. Certainly, I feel that if the court affirms the judgment, this is not going to be a situation where all defendants can get out on summary judgment when they rear-ended somebody, but again, when we take all the facts in their totality, there is no evidence of negligence. My client was going under the speed limit at the time of the impact per his estimate. He was going at the speed limit or under the speed limit before any of this occurred. Yes, he did rear-enter, but again, is it reasonable to do what he did under the circumstances? And I would submit to you that absolutely that's the case. Ms. Redick testified in her deposition that she, if I understand correctly, barely missed the Moore vehicle? Yes. When the Moore vehicle was at least facing the east direction? Yes, Your Honor. And at that time, was the Moore vehicle in the left-hand lane or partially in the left-hand lane? That is my understanding, Your Honor. She swerved around it? She swerved around it to the left where she had a clear path on the shoulder area. Anything else? No, Your Honor. Okay, thank you, counsel.  Mr. Watson, any rebuttals, sir? Your Honor, I would just like to quote what Justice Harris was talking about with the speed and the time, and this is on A71, the appendix on page 22. When Mr. Heiser is saying, when you say everything happened within 10 to 15 seconds, just help me define everything, Mr. Heiser's answer is, the truck moving to the right and me seeing the car head-on in the crash. I think 10 to 15 seconds is ample time to reduce the car's speed. What I would hear Mr. Heiser's testimony is that he was going around 55 miles per hour at the time of the accident. I think 10 to 15 seconds allows you more time to go from 65 to miles per hour, something like that. Let me change the situation a bit, give you a slightly different scenario. Ms. Reddick said she barely missed the Moore vehicle. What if she didn't? Let's assume she struck it and that caused her to, in effect, stop in the left lane, and then Heiser struck her. Would he still be negligent? I think that would be a jury decision. I think that fact pattern is very similar to the facts in the cases that we've cited. The Bergdorf case is very similar where a defendant pulls and goes across multiple lanes of traffic. The plaintiff has to slam on the brakes. The third car hits the plaintiff's car. The court there said, well, that's a jury question. The jury ultimately found that the rear vehicle in that situation wasn't negligent, and that may be here. That may be the same scenario, but we're just asking that the jury be allowed to discuss or decide. So even under those circumstances, you'd say, well, you should have done something better? You should have avoided it? And that's what I think all the cases that we cite in court say, that, well, in this situation, there's usually something that you could have done or at least a question of fact for the jury to decide. Weren't those all cases in which the plaintiff requested and received summary judgment? I'm sorry? Weren't the cases you're talking about ones in which the plaintiff requested and received summary judgment on the grounds of, hey, what could this guy be arguing to you? It was a rear-end collision. Those are the – that is the typical pattern, fact pattern of the appellate decisions, or it's after the jury comes back and finds that the rear driver in a rear-end collision, the jury finds that he wasn't negligent. That's where most of these appellate decisions come from. And that's the plaintiff's argument for a long time was, hey, he rear-ended me. There has to be negligence on his part. The court said no, but it is a jury question. And that's all that we're asking the court to do today is just follow that argument. Okay. Thank you, counsel. We'll take this matter into advisement and be in recess for a few moments.